**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

D.R. an infant by her Mother and
Natural, Guardian, TOWANA
RODRIGUEZ and TOWANA
RODRIGUEZ, Individually,

                                        Plaintiffs,

                   -against-

SANTOS BAKERY, INC. and WILSON
VILLA TENMAZA,

                                        Defendants.
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/9/2024

**20-CV-3628 (KHP)**

**OPINION AND ORDER ON**
**MOTION TO SET ASIDE VERDICT**

**KATHARINE H. PARKER, United States Magistrate Judge:**

On November 22, 2019, Plaintiff Destiny Rodriguez ("Destiny"), a minor, was struck by the side mirror of a truck owned by Defendant Santos Bakery, Inc. ("Santos") and driven by Santos' employee, Defendant Wilson Villa Tenmaza ("Villa"). Destiny's mother, Plaintiff Towana Rodriguez ("Towana"), brought the instant action on behalf of Destiny and herself for injuries that Destiny sustained as a result of the incident. From June 5 to June 8, 2023, I presided over a jury trial in this case. On June 8, 2023, the jury returned a verdict finding that both Destiny and Villa were negligent on November 22, 2019, but Destiny's negligence was not a substantial factor in causing the incident. The jury awarded Destiny $280,000 in past pain and suffering, $2,000,000 in future pain and suffering and $200,250 in future medical costs.

Now before the Court is a motion by Defendants to set aside the verdict as against the weight of the evidence and for a new trial. For the reasons stated below, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

The evidence at trial established that, on the morning of November 22, 2019, while Destiny was walking across a crosswalk on White Plains Road in the Bronx, she was hit in the head by the side mirror of the Santos truck as the truck was driving straight on White Plains Road.  Photographs from the scene showed that White Plains Road is four lanes wide, with concrete support beams positioned half-way through the crosswalk.  It is undisputed that Destiny stepped out from behind a concrete support beam within the crosswalk when she was struck by the truck's side mirror.

At trial, the truck driver, Villa, testified that on the day of the incident, he was driving the Santos truck on White Plains Road to make his morning deliveries.  (ECF No. 77 Tr. 87:19-20.)  He testified that as the truck entered the crosswalk, he felt that the side mirror of his truck hit something, and he immediately applied the brakes, thinking he had hit a support beam.  (*Id.* 62:17-19, 86:3-11, 100:21.)  He testified that he then got out of his vehicle and saw that the truck mirror had hit a girl – Destiny – and he immediately called the police.  (*Id.* 101:6-11.)  He testified that he did not see Destiny walk across the crosswalk, and that she was "on the other side of the post," referring to the support beam.  (*Id.* 91:20-23.)  Villa explained that the post was "wide enough to block the view of a person." (*Id.* 92:4-5).

Destiny testified that on the day of the incident, she was 13 years old and in the eighth grade.  (*Id*. 122:5-19.)  She testified that she was walking to her school bus that morning when she reached the White Plains Road crosswalk.  (*Id.* 140:1-17.)  She stated that she waited for the walk signal, and then, without looking left or right, crossed the street within the crosswalk with the walk signal.  (*Id*. 142:15-17, 145:21-23.)  Destiny testified that she did not see the truck

coming toward her and fell unconscious after being struck.  (*Id.* 148:13-149:20, 150:20-23,

151:22-152:2.)  She testified that she learned following the incident that her injuries included a

fracture in her skull, a fractured nose, and bleeding inside the brain.  (*Id.* 152:19-24.)  Medical

records submitted to the jury showed that Destiny's injuries included acute fractures of the left

orbit (i.e., the bony structures of the skull that house the eye and its appendages) and anterior

skull base; a depressed and comminuted left orbital roof fracture; fractures of the right

maxillary sinus anterior and lateral walls; and left anterior skull base subarachnoid hemorrhage,

among other injuries.  The medical evidence also showed that Destiny required a root canal due

to pulp necrosis as a result of the incident.

Destiny testified that immediately following the incident, she stayed in the emergency

department for two days, and returned to the hospital shortly thereafter for a surgery to

"separate my skull from my eye."  (*Id.* 154:5-156:6.)  Destiny then recovered at home for three

months before being cleared to return to school.  (*Id.* 133:16-17.)  Destiny testified that on

returning to school, she felt a "very intense fear" when trying to cross the road and needed

school staff to assist her in crossing the road.  (*Id*. 137:23-25.)  She also testified that on

returning to school, she endured teasing from her classmates, including "very impolite

questions" about her injuries.  (ECF No. 79, 183:22-184:4.)  She testified that her nose had

become "smushed and flat" as a result of the injuries to her face, that her eye drooped, and

that her glasses no longer sat straight on her face.  (*Id.* 184:14-24.)  The jury was shown before-

and-after photographs of Destiny's face and observed Destiny's face in person at trial.

Destiny also testified that she experienced, and continues to experience, "strong

headaches" around her forehead, the back of her neck, and in the sinus area that get worse

when she tries to read or concentrate.  (*Id.* 188:17-23.)  She testified that before the incident

she was "a lot more happy," but now feels "tired and exhausted."  (*Id.* 188:3-9.)  Destiny also

testified about struggling academically after the incident and noted that whereas she used to

be a good student, she now required extra help and was almost held back a grade.  (ECF No. 77

Tr. 129:16-132:10; ECF No. 79 Tr. 186:2-187:21.)  Destiny also testified to receiving mental

health counseling at school for what she was "going through from the incident," but that she

did not find the school-provided counseling helpful, and so she stopped going.  (*Id.* 135:19-25.)

Destiny's mother, Towana, testified about going to the scene of the incident by

coincidence to buy groceries when she saw a commotion and realized that Destiny was being

placed in an ambulance.  (ECF No. 79, Tr. 207:6-10.)  She stated that she went to the emergency

room with Destiny in the ambulance and stayed there for two days while Destiny was stabilized.

(*Id.* 208:16-212:23.)  She testified that Destiny received a surgery shortly after the incident, and

stated that after the surgery, Destiny could not open her left eye for about three weeks to a

month and was in substantial pain.  (*Id.* 215:19-216:4.)  Towana testified that Destiny returned

to school three months after the incident.  (*Id.* 213-222.)  She testified that Destiny continues to

experience headaches requiring the use of pain relievers, and that Destiny "used to love to

read" but now gets headaches from reading.  (*Id.* 226:12-19.)  She also testified that, since the

incident, Destiny's performance in school has declined.  (*Id.* 225:19-23.)  Towana testified that

other than the surgery Destiny received immediately following the incident to fix the fracture of

the bone above her eye and a root canal, Destiny had not received any other medical treatment

for her injuries.  (*Id.* 232:8-16.)  Towana testified that she understood Destiny may need

another root canal in the future.  (*Id.* 232:20-22.)

4

Plaintiffs and Defendants each presented an expert witness who examined Destiny to opine on her injuries.  Plaintiffs' expert, Dr. Cronyn, testified that he believed to a reasonable degree of medical certainty that Destiny suffered from "myofascial pain dysfunction syndrome" as a result of the trauma to her brain from the incident.  (*Id.* 279:5-24; 280:2-19.)  He explained that this syndrome involves a real, chronic pain coupled with "an overlay of despair."  (*Id.* 281:17-19.)  He further testified that Destiny's affect was "blunted," which he explained meant that Destiny did not exhibit a regular communication style.  (*Id.* 282:17.)  He explained that whereas a person, even a shy person, would typically communicate with certain behavioral cues, "somebody with a blunted affect, you say the words, you have the conversation but ... you're not getting any feedback."  (*Id.* 285:6-15.)  He also testified that he observed Destiny to have facial asymmetry, which he opined was likely a result of the injuries she sustained from the incident and the fact that she was still growing at the time of the injuries.  (*Id.* 291:22-25.)

Dr. Cronyn testified that should Destiny elect to undergo a rhinoplasty surgery to "correct" the flat appearance of her nose,  it would cost about $10,000 to $15,000 in Buffalo, New York, where he practiced.  (*Id.* 276:16-277:3.)  He testified that he would not recommend any other cosmetic surgeries for Destiny, and that in his opinion there were no surgeries that would correct the myofascial pain dysfunction syndrome, but that some people with the syndrome find relief through "mind-altering drugs."[1]  (*Id.* 282:10-12, 294:23-296:8.)

Defendants' expert, Dr. Goldstein, testified that based on his examination of Destiny, he did not believe that she had myofascial pain dysfunction syndrome.  (*Id.* 338:21-25.)  He also

---

[1]  Although this was not discussed in any detail at trial, the Court understood Dr. Cronyn's testimony regarding "mind-altering drugs" as referring to antidepressants.

disagreed with Dr. Cronyn that Destiny had any observable facial asymmetry.  (*Id.* 342:24.)  Dr. Goldstein also testified that he saw nothing in his examination of Destiny to suggest that she would need any further treatment or surgery.  (ECF No. 81, 339:14-16.)

At the end of the second day of trial, Plaintiffs moved for a directed verdict as to liability and damages, and Defendants moved to dismiss the claims for past and future medical expenses.  (ECF No. 79, Tr. 304:2-305:19.)  The Court denied the motions without prejudice to renewal after the close of all testimony.  (*Id.* 305:19-20.)  At the close of testimony, the parties renewed their motions.  (ECF No. 81, Tr. 389:6-24.)  The Court denied the motions, but after reviewing the trial transcripts, the Court dismissed the claim for past medical expenses, finding that there was no testimony in the record as to past medical expenses.  (*Id.* 390:1-4; 397:1-8.)

After the jury returned a verdict, Defendants moved to set aside the verdict as against the weight of the evidence and for a new trial.  Defendants' motion rests on three grounds.  First, they argue that the jury reached an inconsistent verdict by finding Destiny negligent but also finding that her negligence was not a substantial factor in causing the accident.  Second, they argue that the jury's award of $2,000,000 for future pain and suffering exceeds the bounds of "reasonable compensation" as a matter of law.  Third, they argue that the jury's award of $200,250 for future medical expenses must be set aside as it is speculative and not based on any evidence of reasonable medical necessity.  Plaintiffs oppose the motion.

## LEGAL STANDARDS

1. **Federal Rule of Civil Procedure 50**

Federal Rule of Civil Procedure 50 provides that, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally

sufficient evidentiary basis to find for the party on that issue, the court may … resolve the issue against the party."  Fed. R. Civ. P. 50(a).  If a Rule 50 motion is made at trial and denied, the motion may be renewed after the entry of judgment.  Fed. R. Civ. P. 50(b).

"Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor."  *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000) (citation omitted).  The court "'must give deference to all credibility determinations and reasonable inferences of the jury,' and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence."  *Id*. (citation omitted).  Thus, judgment as a matter of law should be granted only if "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Id.* (citation omitted).

### 2.  **Federal Rule of Civil Procedure 59**

Federal Rule of Civil Procedure 59(a)(1)(A) provides that the court "may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "Such a motion ordinarily should be denied unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 324 (2d Cir. 2022) (quotation marks and citation omitted).

Unlike a motion for judgment as a matter of law under Rule 50, a motion for a new trial under Rule 59 "may be granted even if there is substantial evidence to support the jury's

verdict." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998).  In reviewing a motion for a

new trial, the court must "view the evidence in the light most favorable to the nonmoving

party."  *Caruolo*, 226 F.3d at 54.  Rule 59(a) motions are "committed to the sound discretion of

the district court."  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998).

### 3.  N.Y. C.P.L.R. § 5501(c)

In a diversity case such as this one, the assessment of the dollar amount awarded by the

jury is governed by state law standards.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 437-

38 (1996).  The role of the district court sitting in diversity is to determine whether the verdict

"is within the confines set by state law, and to determine, by reference to federal standards

developed under Rule 59, whether a new trial or remittitur should be ordered."  *Id.* at 437.

Under New York law, "an award is excessive or inadequate if it deviates materially from

what would be reasonable compensation."  *Id.* at 420 (citing N.Y. C.P.L.R. § 5501(c)).  "To

determine whether an award 'deviates materially from what would be reasonable

compensation,' New York state courts look to awards approved in similar cases."  *Id*. at 425

(citations omitted).  In making this evaluation, the court must defer to the interpretation of

evidence by the jury, and should not substitute its judgment for "that of a panel of fact finders

whose peculiar function is the fixation of damages."  *Okraynets v. Metro. Transp. Auth.*, 555 F.

Supp. 2d 420, 436, 451 (S.D.N.Y. 2008) (citations omitted).  The party challenging the award

bears the burden of convincing the court that the award is excessive.  *Id*. (citation omitted.)

If a court finds that the jury's damages award is excessive, the court may, through the

process of remittitur, "compel[] a plaintiff to choose between reduction of an excessive verdict

and a new trial.'"  *Kelleher v. N.Y. State Trooper Fearon*, 90 F.Supp.2d 354, 362-63

(S.D.N.Y.2000) (*quoting Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990)).  A

plaintiff has the right to refuse the remittitur, and if the plaintiff does so, the court should

conduct a new trial limited to the question of damages.  *Singleton v. City of New York*, 496 F.

Supp. 2d 390, 394 (S.D.N.Y. 2007), *aff'd*, 308 F. App'x 521 (2d Cir. 2009).

<u>ANALYSIS</u>

1. **Whether the Verdict as to Contributory Negligence was Inconsistent**

Under New York law, "[a] jury finding that a party was negligent but that the negligence

was not a proximate cause of the accident is inconsistent and [contrary to] the weight of the

evidence only when the issues are 'so inextricably interwoven as to make it logically impossible

to find negligence without also finding proximate cause.'"  *Cordice v. N.Y.C. Transit Auth*., 95

N.Y.S.3d 874, 876 (2019) (citation omitted).  "[W]here the verdict can be reconciled with a

reasonable view of the evidence, the successful party is entitled to the presumption that the

jury adopted that view."  *De La Cruz v. N.Y.C. Transit Auth.*, 852 N.Y.S.2d 263, 263 (2008).

Here, Defendants argue that the jury reached an inconsistent verdict by finding that

Destiny was negligent but that her negligence was not a substantial factor in causing the

incident.  They argue that had Plaintiff looked for oncoming traffic, the accident would not have

occurred, and thus Destiny's negligence in failing to look for oncoming traffic before crossing

the street was necessarily a substantial factor in causing the accident.  (Memo of Law 3.)

Defendants' argument is unavailing.  The jury appears to have credited Destiny's

testimony that she had the right of way when she crossed the street within the crosswalk, and

to the extent the jury found Destiny negligent, this was simply for failing to look for oncoming

vehicles as she crossed the street.  The jury could logically have surmised that, even if Plaintiff

was looking for oncoming traffic as she stepped out behind the concrete support beam in the middle of the crosswalk, she would not have had time to jump back to avoid the Santos truck that was heading toward her, and would have been hit by the side mirror of the truck anyway. Indeed, just as Defendants argued that Villa could not see Destiny while she was behind the support beam, the jury could reasonably surmise that Destiny would not have seen the truck from behind the support beam, and would need to step out from behind the beam to observe oncoming traffic. *See De La Cruz*, 852 N.Y.S.2d at 263 (jury's finding that the plaintiff was negligent in crossing at the intersection, but that her negligence was not a proximate cause of her being struck by a bus, was not inconsistent); *Won Sok Kim v. N.Y.C. Transit Auth.*, 817 N.Y.S.2d 306 (2006) (same).

Additionally, insofar as the testimony was that Destiny was crossing with the walk signal, the jury could reasonably surmise that the truck was crossing against the light and that but for the driver's negligence the accident would not have occurred, even if Destiny, a 13-year old, looked only at the walk signal and not to her left while in the middle of the crosswalk. As the Appellate Division explained in *De La Cruz*, which involved similar facts to this case, "the jury reasonably could have found that, although the plaintiff was negligent in failing to observe the [vehicle], only the defendants' negligence was the proximate cause of the plaintiff's injuries." 852 N.Y.S.2d at 263.

Defendants' cited cases are distinguishable because they all involve the negligence of a driver rather than a pedestrian, except for *McCollin v. New York City Housing Authority*, 764 N.Y.S.2d 40 (2003), which did not involve a traffic accident at all. New York courts frequently find that negligent driving that precipitates an accident is a substantial factor in causing the

accident.  *See Garrett v. Manaser*, 779 N.Y.S.2d 565 (2004) (in two-vehicle collision, holding that

it was inconsistent for the jury to find that the defendant was negligent for "nos[ing] out" into

the intersection when his view of traffic was blocked but that the negligence was not a

contributing factor of the accident); *Salazar v. City of New York*, 755 N.Y.S.2d 423 (2003) (where

plaintiffs' vehicle was struck by a truck, holding that it was inconsistent to conclude that the

truck driver was negligent but his negligence was not a substantial factor in causing the

collision); *Misa v. Filancia*, 769 N.Y.S.2d 404 (2003) (where both drivers in two-car collision were

negligent, holding that it was inconsistent to find that the negligence of at least one driver was

not the proximate cause of accident); *Pimpinella v. McSwegan*, 623 N.Y.S.2d 863 (1995) (where

the plaintiff was negligent in driving into the parking lane, holding that it was inconsistent to

find that this negligence was not a substantial factor in causing a collision with defendant's car).

Here, in contrast to Defendants' cited cases, Destiny was not a negligent driver, but was

simply a pedestrian crossing the street within a crosswalk with the walk signal who failed to

look for oncoming traffic.  In light of the specific facts of the case, the jury acted rationally in

finding that Destiny's failure to look left and right while in the middle of the crosswalk with the

walk signal was not a substantial cause of the accident.  Accordingly, Defendants' motion to set

aside the verdict as inconsistent is denied.

## 2.  Whether the Jury Award of $2,000,000 for Future Pain and Suffering is Excessive

In determining whether the dollar amount awarded is excessive, the Court must

determine whether the amount deviates materially from awards in similar cases.  *Gasperini*,

518 U.S. at 420.  "Although economic awards are quantifiable, awards for pain and suffering ...

'do not lend themselves as easily to computation,'" *Okraynets*, 555 F. Supp. 2d at 435 (citations

omitted), and are "inescapably subjective," *Gibbs v. United States*, 599 F.2d 36, 39 (2d Cir.

1979).  Moreover, "[s]imilar injuries to two different plaintiffs may result in significantly

different levels of pain and suffering, which makes the task of comparing the injuries in one

case to those in another most formidable." *Okraynets*, 555 F. Supp. 2d at 436 (citation omitted).

Thus, "[t]he party challenging the jury's award bears the burden of convincing the court that

the award lies 'beyond the pale of non-material deviation.'" *Id*. at 451 (citation omitted).

Destiny was awarded $2,000,000 for future pain and suffering.  Defendants argue that

this award is excessive in light of a lack of evidence of continuing medical treatment and assert

that they were "unable to find a reported decision affirming an award for a broken nose with

purported residual nerve damage, comparable to the award granted here."  (Memo of Law 6.)

However, Defendants minimize Destiny's injuries as evidenced at trial.  Contrary to Defendants'

assertions, the evidence at trial supported a finding that Destiny's long-term injuries were

significant and long-lasting and included severe chronic pain and despair, difficulty

concentrating, decreased enjoyment of life activities such as reading, decreased self-esteem,

decreased academic success, and decreased professional and personal opportunities.

To start, the evidence supported a finding that Destiny suffers from, and will continue to

suffer from, severe headaches that impact her ability to enjoy life and to succeed academically

and professionally.  Destiny testified that, following the accident, she experiences regular

"strong headaches" requiring the use of pain relievers, that the headaches are triggered by

situations where she needs to focus, "like reading or studying for a test," and that the

headaches have substantially impacted her performance at school and her grades.  (ECF No. 77,

Tr. 129:16-132:10; ECF No. 79, Tr. 188:17-190:1.)  Destiny also testified that she went from a

"happy" person before the incident to feeling "a lot more tired and exhausted" as a result of the incident.  (ECF No. 79, Tr. 188:3-9.)  Towana corroborated Destiny's testimony and testified that she provides Destiny with pain relievers to assist with the headaches.  Towana also stated that Destiny "used to love to read," but now requires pain medication "when she's reading a book."  (*Id.* 226:12-19.)  Towana also testified that, since the incident, Destiny's performance in school had noticeably declined.  (ECF No. 81, Tr. 225:19-23.)

Dr. Cronyn, testified that he believed that Destiny suffered from myofascial pain dysfunction syndrome as a result of the incident, which he explained involves lifelong chronic pain coupled with an overlay of despair.  (*Id.* 279:5-24; 280:2-19, 281:17-19.)  Although Defendants argue that the evidence did not support this diagnosis, the jury was permitted to credit the expert's testimony, which was grounded on his expertise and his examination of Destiny and also was supported by Destiny's self-reported headaches and her medical records. Dr. Cronyn further testified that Destiny's affect was "blunted," and suggested that Destiny was not able to communicate in a typical way as a result of the incident.  (*Id.* 282:17; 285:6-15.)  The jury also was able to observe Destiny's "blunted" affect during her testimony.

Thus, the evidence not only supported a finding that Destiny would live the rest of her life with chronic pain and despair as a result of the collision with the Santos truck, but also that these symptoms had impacted Destiny's academic success and would likely impact her professional and relational successes as well.

Additionally, the evidence supported a finding that Destiny suffered meaningful negative changes to her appearance as a result of the incident that impacted her self-esteem. The jury saw before-and-after pictures of Destiny and could make a determination by looking at

the photographs and applying their normal judgment that Destiny's appearance was negatively impacted.  Dr. Cronyn also testified that from a medical perspective, Destiny's face had a noticeable asymmetry that was likely the result of the fractures to her skull and facial bones and that "led to her to look a little bit askew." (*Id.* 291:22-25.)  Destiny also testified to experiencing severe teasing at school as a result of her appearance following the incident and the jury could reasonably have inferred from Destiny's demeanor and testimony that her self-esteem was significantly impacted as a result.  (*Id.* 133:8-134:5; 135:7-14.)  The jury may reasonably have found that the long-term impact of her facial injuries was particularly significant for Destiny given that the injuries occurred when Destiny was a young teenager.

It was also reasonable for the jury to take into account the fact that Destiny was a child at the time the injuries were sustained when calculating future damages.  As an initial matter, a child obviously is expected to live for more years than an adult.  The award of $2,000,000 to Destiny, who was 16 years old at the time of trial, amounts to $40,000 per year, assuming Destiny lives to be 66 years old in accordance with life expectancy tables.  Had the plaintiff in question been an adult who suffered the same injuries and with the same life expectancy, a lower award would be appropriate to account for a shorter expected remaining duration of the plaintiff's life.  Moreover, a child's future is less certain and more likely to be substantially impacted by the type of injuries described above than an adult who may already have a spouse, a career, healthy self-esteem, and accumulated savings.  It is reasonable to surmise that because Destiny sustained her injuries as a child while she was still in school, the trajectory of her future is more substantially impacted by her symptoms, which include difficulty concentrating and difficulty communicating.  Such symptoms may reasonably be expected to

impact Destiny's likelihood of getting into a good college, which in turn will impact her career prospects.  By contrast, a hypothetical adult plaintiff who experienced the same injuries as Destiny would not need to worry about the impact of getting bad grades in school.

Taking into account Destiny's age at the time of the accident and her life expectancy, cases cited by both Plaintiffs and Defendants indicate that the award in this case does not deviate materially from what would be considered reasonable.  For example, Defendants cite *Beauvais v. City of New York*, in which the Appellate Term reduced an award for future pain and suffering to $300,000 for a 61-year-old plaintiff who suffered from herniated discs and bilateral temporomandibular joint dysfunction (TMJ) but whose pain was "stabilized by prescription medication and physical therapy."  873 N.Y.S.2d 231 (App. Term 2008).  Assuming the plaintiff in *Beauvais* would live to be 66 years old, this amounts to $60,000 per year for pain that was controlled by medication and physical therapy.  Thus, the Court awarded the plaintiff in *Beauvais* $20,000 *more* per year for future pain and suffering than was awarded to Destiny, whose injuries went beyond pain alone.  Similarly, Plaintiffs cite numerous cases from New York state courts where plaintiffs who sustained head and face injuries were awarded approximately $15,000 to $100,000 per year for future pain and suffering, indicating that Destiny's award of $40,000 per year is within a normal range.

Defendants argue that Plaintiffs' cited cases are "not comparable" to this case because they involved injuries not present here, such as cognitive impairment and hearing loss.  (Reply 2.)  While this is true, neither Plaintiffs nor Defendants cited cases involving identical injuries to those suffered by Destiny, and this was not required; the Court must look to "similar" cases, not identical cases.  *Gasperini*, 518 U.S. at 425.  While there was no evidence that Destiny

experienced cognitive impairment or hearing loss, the evidence showing decreased academic performance, difficulty concentrating, and reduced enjoyment from reading may be considered similar to a cognitive impairment for purposes of evaluating the excessiveness of the award, particularly in light of the fact that Defendants did not cite any cases involving decreased concentration or worsened academic performance, and it is Defendants' burden to prove that the award constitutes a material deviation from similar cases.

This Court is also aware of numerous jury verdicts in this Circuit that are within the same range as what was awarded to Plaintiff for similar injuries resulting in chronic pain and reduced enjoyment of life activities.  *See, e.g.*, *Bean v. CSX Transp.*, 289 F. Supp. 2d 277, 285 (N.D.N.Y. 2003), *aff'd*, 111 F. App'x 636 (2d Cir. 2004) (noting that awards for pain and suffering for severe back injuries as high as $3,000,000 had been sustained in federal and state courts); *Tardif v. City of New York*, 2023 WL 2495897, at *9 (S.D.N.Y. Mar. 14, 2023) (noting that New York courts have awarded plaintiffs up to $3,000,000 for future pain and suffering on account of brain injuries); *Bachir v. Transoceanic Cable Ship Co.*, 2002 WL 413918, at *7-8 (S.D.N.Y. Mar. 15, 2002) (noting that a review of cases involving chronic pain and PTSD provided a range of awards for pain and suffering up to $2,000,000).  These cases indicate that Destiny's award is within a normal range.

Accordingly, Defendants' request that the Court reduce the award for future pain and suffering is denied.

### 3.  Whether the Jury Award of $200,250 for Future Medical Expenses is Speculative.

Unlike damages for pain and suffering, damages for future medical expenses are limited to costs that are "reasonably certain to be incurred and necessitated by plaintiff's injuries."

16

*Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 7 (2d Cir. 2019) (citing *Schultz v. Harrison Radiator Div. Gen. Motors Corp.*, 90 N.Y.2d 311 (1997)).  "Awards of damages for past and future medical expenses must be supported by competent evidence which establishes the need for, and the cost of, medical care."  *Abedin v. Osorio*, 188 N.Y.S.3d 173, 174 (2023) (citations omitted); *see also Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 479-80 (S.D.N.Y. 2003) (Awards for medical expenses, unlike "the more nebulous pain and suffering awards," must "closely approximate the medico-economic evidence presented at trial.").  "Evidence submitted at trial that is purely speculative does not support an award of damages for future medical expenses."  *Id.* (citations omitted).

Defendants argue that the award for future medical expenses must be set aside as it is speculative and not based on evidence of reasonable medical necessity.  There was no evidence in the record as to any future medical expenses that Destiny would be reasonably certain to incur.  Towana testified that other than the surgery performed on Destiny shortly after the incident as well as a root canal treatment, Destiny had not required ongoing medical treatment or procedures.  Towana stated that she understood Destiny may need another root canal in the future, but did not state what this understanding was based on, and there was no further testimony or evidence to support this assertion, nor was any cost estimation for a root canal provided.  Thus, any award for future medical expenses based on an anticipated future root canal is not based on competent evidence and is speculative.  *See Stylianou v. Calabrese*, 297 A.D.2d 798, 799 (2d Dep't 2002) (setting aside an award for future surgery where "plaintiff's physician failed to state a basis" for his opinion that plaintiff would require such surgery).

Dr. Cronyn testified that there were no surgeries that he believed would treat Destiny's myofascial pain disorder syndrome, but he stated that Destiny may choose to undergo cosmetic surgery to improve the appearance of her nose, which would cost about $10,000 to $15,000 in Buffalo.  (ECF 79, Tr. 277:1-3.)  Dr. Cronyn did not testify that this surgery was necessary, nor that the surgery was recommended for Destiny.  There was no testimony from Destiny or anyone else as to whether Destiny would elect to undergo this surgery.  Dr. Cronyn also testified that other procedures could be considered for Destiny, such as craniofacial surgery to raise her orbit, but that such procedures were not recommended because the risks of the surgeries outweighed the benefits.  (*Id.* 295:11-15.)  Dr. Cronyn did not provide a cost estimate for such procedures.  Because there was no indication in the record that Destiny would need to, or choose to, undergo any cosmetic procedures, any award of future medical expenses based on such procedures is speculative.  *See Castro v. U.S. Postal Serv.*, 2015 WL 1412660, at *2 (E.D.N.Y. Mar. 23, 2015) (plaintiff's claim for future medical expenses was "far too speculative to justify an award" where there was no indication in the record that the plaintiff would undergo the procedure in question); *Hernandez v. N.Y.C. Transit Auth.*, 52 A.D.3d 367, 369 (1st Dep't 2008) (jury's award for a future operation within 5 years was speculative when plaintiff's witness did not say that the plaintiff needed such surgery in that timeframe).

Dr. Cronyn also testified that people with myofascial pain dysfunction syndrome sometimes find relief through "mind-altering drugs," but he provided no information as to whether such drugs were recommended for Destiny, what they would cost, or the duration of time Destiny might be expected to use such drugs.  (*Id.* Tr. 282:10-12.)  Thus, any award based on an expected cost of "mind altering drugs" is speculative and not based on competent

evidence.  *See Hernandez*, 860 N.Y.S.2d 75 (setting aside award for future psychotherapy expenses where the plaintiff was not undergoing psychotherapy at the time of trial and the expert did not establish the plaintiff's need for future psychotherapy with reasonable certainty); *Yan Zhao v. United States*, 273 F. Supp. 3d 372, 401 (W.D.N.Y. 2017) (following bench trial, finding doctor's testimony that Paxil and Klonipin could help treat the plaintiff's injuries was speculative and that, absent other evidence of future medical expenses, the plaintiff had failed to establish entitlement to an award for future medical expenses).

In sum, the testimony elicited at trial established only that *potential* surgical and medical options existed for Destiny to improve her appearance and symptoms in the future, but did not establish that any future medical expenses are necessary nor reasonably certain to be incurred.  Plaintiffs argue that the jury based its verdict as to future medical expenses on "the typical layperson's understanding of the high cost of medical care," (Opp. 25), but this is not the standard for an award of medical expenses.  *See Abedin*, 188 N.Y.S.3d at 174 ("Awards of damages for past and future medical expenses must be supported by competent evidence which establishes the need for, and the cost of, medical care.").  Thus, the jury's award for future medical expenses was not supported by the evidence at trial.

When an award is found to be excessive, a district court should remit the award only to the maximum amount that would be upheld as not excessive, and if the plaintiff rejects the remittitur, the court should hold a new trial.  *Earl*, 917 F.2d at 1330.  Here, the issue with the award for future medical expenses is not that it is excessive, but rather that it is entirely speculative and not based on any evidence.  Were the Court to hold another trial, there would be no evidence to permit any award for future medical expenses.  Accordingly, the Court need

not order a remittitur or hold a new trial on this issue, but may resolve the issue in Defendants'

favor pursuant to Rule 50.  *See Caruolo*, 226 F.3d at 51 (judgment as a matter of law under Rule

50 may be granted if there is a "complete absence of evidence supporting the verdict").

Therefore, Defendants' motion for judgment as a matter of law is granted to the extent

they request that the Court set aside the verdict for future medical expenses.

## CONCLUSION

Defendant's motion to vacate the jury verdict is GRANTED the extent it seeks that the

Court set aside the award of $200,250 for future medical expenses, and is otherwise DENIED.

The Clerk of the Court is respectfully directed to enter an amended judgment in this

case as follows: Plaintiffs are awarded $280,000 in past pain and suffering and $2,000,000 in

future pain and suffering for a total of $2,280,000.  The Clerk of the Court is respectfully

directed to terminate the motion at ECF No. 91 and to close this case.

**SO ORDERED.**

DATED:       New York, New York
             February 9, 2024                      _Kathaine H Parker_____
                                                   KATHARINE H. PARKER
                                                   United States Magistrate Judge

20